# REPORTS OF CASES

DETERMINED IN

# THE SUPREME COURT,

## JANUARY TERM, 1865.

27 119
77 93
77 338
27 119
90 235
27 119
97 580
27 119
104 607
27 119
146 137
27 119
148 456

---

## THOMAS W. MILLARD *v.* CHARLES W. HATHAWAY, AND EDMUND V. HATHAWAY.

APPEAL FROM JUDGMENT.—On an appeal from a judgment, if no errors are assigned in the record, the appellate Court will only review the judgment roll.

WAIVER OF FAILURE TO FILE STATEMENT AND SERVE NOTICE.—If the order denying a motion for a new trial states that the motion was submitted upon the statement and affidavits by consent of the respective attorneys, the respondent is precluded in the appellate Court from saying that the statement was not filed in time, or that the notice of intention to move for a new trial was not filed or served.

WHEN TRUST CREATED, AND HOW.—When, on the purchase of property, the conveyance of the legal estate is taken in the name of one person, while the consideration is given or paid by another, a resulting or presumptive trust immediately arises, and the person named in the conveyance will be a trustee for the party from whom the consideration proceeds.

PLEADINGS, FINDINGS, AND JUDGMENT. — If the findings of fact follow the issues raised by the pleadings, and a demurrer would not be sustained to the complaint, the judgment will not be arrested upon the findings.

FINDINGS OF THE COURT.—The findings of a Court cannot be altogether detached from each other and considered separately. If a particular finding be doubtful or obscure, reference may be had to the others to ascertain its true meaning.

IMPLIED TRUST—PROOF OF.—The facts constituting an implied trust can be proved by parol testimony.

RECITAL IN A DEED.—The recital in a deed that the purchase money of the property thereby conveyed was paid by the grantee, is not conclusive that such was the fact in an action brought by an alleged *cestui que trust* against the grantee as trustee to establish the trust. The recital may be explained or contradicted by parol testimony.

PROOFS IN ACTION TO ESTABLISH IMPLIED TRUST.—In an action brought to establish an implied trust, on the ground that the deed was executed to one party and the purchase money furnished by another, the party alleging the implied trust must prove clearly that the money belonged to him; and if the testimony is merely parol, it will be received with great caution.

STIPULATION OF *Cestui Que* TO REPAY MONEY TO TRUSTEE. — Where one pays the purchase money, and the deed is executed to another, the law implies a trust, to be executed by a conveyance to the *cestui que*, on demand; and this implied trust is not destroyed because the beneficiary stipulates, in writing, to repay the money, with interest, until paid; and the trust is not to be executed until the money is paid.

PROOF OF RELEASE OF EQUITABLE ESTATE IN LAND.—A release of an equitable estate in land can only be proved by a deed or conveyance, in writing, subscribed by the party granting the same, or by his lawful agent thereunto authorized by writing.

STATUTE OF LIMITATIONS IN CASES OF TRUSTS.—If one holds the legal title to land in trust for another, and there is a stipulation that the trustee shall deed the land to the beneficiary upon the payment of the purchase money and interest to the trustee, a cause of action does not accrue to compel the execution of the trust until the money is paid, nor does the Statute of Limitations commence running until this time.

VOLUNTARY ACCEPTANCE OF MONEY DUE TRUSTEE AFTER IT HAS BEEN DUE FOUR YEARS.—If one holds the legal title to land as security for a sum of money due him by the one having the equitable estate, although the trustee, after the lapse of four years from the time the money falls due, cannot be compelled to accept the money and execute a conveyance, yet, if he voluntarily receives the money when tendered, he is not discharged by the Statute of Limitations from executing the trust and giving a deed to the beneficiary.

APPEAL from the District Court, Third Judicial District, Alameda County.

The Court below found the following facts :

1. That in the year 1855, the plaintiff, for the joint and equal benefit of himself and one Joseph Scott, and one Theodore H. Scribner, negotiated for and purchased of Fulgencio Higuera and Celia Feliz de Higuera, his wife, the tract of land in said complaint referred to, situate in the county and State aforesaid, for the agreed sum and price of eight thousand dollars; the same being part of the Agua Caliente Rancho, then and there the property of said Higuera and wife, and estimated to contain two thousand seven hundred acres; but the actual

quantity, on survey, was two thousand eight hundred and three acres.

2. That being unable to pay said sum of eight thousand dollars, plaintiff applied to defendant, Charles W. Hathaway, and requested him to lend him the money to complete the purchase, which said Hathaway agreed to do.

3. That thereupon the purchase was concluded, and for security for the said sum so loaned, the deed from said Higuera and wife for the said land was made directly to said Hathaway, and it was expressly agreed by parol that said Hathaway should hold the same until said sum of eight thousand dollars was repaid, and should then convey the land to said plaintiff, Scribner and Scott; and in pursuance thereof, said Hathaway did loan and advance said eight thousand dollars on the terms aforesaid, on the 25th day of August, A. D. 1855, and on the same day did take and receive a deed of that date, duly executed and acknowledged by said Higuera and wife, to himself for said land.

4. That all the negotiations in relation to the purchase of said property were had and made by plaintiff, and that said Hathaway knew nothing about them and had nothing to do with them, except that at the request of plaintiff he paid the money and received the deed as above stated, and thereafter plaintiff, and said Scott and Scribner, entered into the possession of said land and occupied and cultivated the same.

5. That said purchase was made for the joint benefit of said plaintiff, Scott and Scribner; they, said Scott and Scribner, to have one third part each of said premises upon payment of their proportionable part of the consideration therefor to said Hathaway, to apply in reduction of said loan; in pursuance whereof a survey was made of said land, and the same was divided into three equal parts; and the said Hathaway, in pursuance of his agreement with said Scott and Scribner, did, by deed dated on the 13th day of October, 1855, convey to said Scott the southerly one third part of said lands as divided, the same being nine hundred and thirty-four and sixty-seven one-hundredths acres; that in like manner, and in fulfilment

16

of his agreement with said Scribner, said Hathaway did, by deed dated December 15, 1855, convey to said Scribner one third part of said land, viz : nine hundred and thirty-four and sixty-seven one-hundredths acres.

6. That the remaining nine hundred and thirty-four and sixty-seven one-hundredths acres was set off to plaintiff on a partition thereof theretofore made between him and said Scribner, the same being in two parcels, viz. : two hundred and thirty-one and fifty-three one-hundredths acres was set off to him from the northerly end of said tract, and was bounded southerly by the share so conveyed to Scribner as aforesaid, and that the residue of one third, being four hundred and three and fourteen one-hundredths acres, was set of to plaintiff between the two shares of Scott and Scribner.

7. That the said plaintiff immediately after said purchase entered into possession of the parcels so set off to him, and cultivated and controlled the same, and still resides upon said parcel of five hundred and thirty-one and fifty-three one hundredths acres.

8. That in the year 1861 plaintiff negotiated the sale of said four hundred and three and fourteen one-hundredths acres to one Valpy, and in pursuance thereof defendant Edmund V. Hathaway conveyed the same by deed to said Valpy for the sum of six thousand five hundred dollars, paid by said Valpy to him on March 5th, 1861, and which sum was received by said defendant upon the money so advanced and loaned for the purchase thereof and for the interest therein, and that afterwards and before the commencement of this action the whole of the one third remaining unpaid of the said eight thousand five hundred dollars, with interest thereon from August 25, 1855, at the rate of three per cent per month, had been paid to said defendant E. V. Hathaway ; the other two thirds thereof, with interest, having been before paid by said Scott and Scribner, as hereinbefore stated.

9. That said defendant, Edmund V. Hathaway, took the conveyance of said land from Charles W. Hathaway, with full

knowledge of the trust, and without any consideration by him paid.

10. That more than four years have not elapsed since any cause of action has accrued against said defendants, on the agreement with defendants for the conveyance of said land.

11. That said contract to reconvey said land to plaintiff remains yet in full force and effect, and never has been cancelled, abrogated or impaired by any subsequent contract or agreement between plaintiff and defendant, or either of them, and that no sum is due from plaintiff to defendants, or either of them, on account of any money or property advanced to him by them, or either of them.

12. And as a conclusion of law, the Court finds and determines that the said plaintiff is entitled to a conveyance from defendant, Edmund V. Hathaway, in whom the legal title of said tract of five hundred and thirty-one and fifty-three one-hundredths acres is now vested of said tract of land, as the same is particularly described by metes and bounds in the complaint, and a decree of this Court is ordered to be entered accordingly.

The other facts are stated in the opinion of the Court.

*John T. Doyle*, and *W. W. Crane, Jr.*, for Appellant.

Did or did not the facts in law constitute a loan from Hathaway to Millard and his associates? This is purely a legal question; and as a legal question, does it admit of serious doubt or argument? Millard applied for what, in popular phraseology, he terms a loan. What he really wants is to find a man to advance the necessary sum to make the purchase of which he is to have the benefit. While yet *in fieri*, it is talked of between the parties as a loan—but that does not make it such. The legal character of the transaction does not depend on the preliminary negotiations, or the language employed in them, but on the actual contract into which they ultimately merged and were absorbed.

*That contract was all put in writing.* It consisted of the deed from Higuera to Hathaway, which conveyed the land,

and the agreement, Exhibit No. 1, signed by Millard, Scott, and Scribner, reciting that he had purchased and paid for it in his own name, but for their account, and promising repayment. To vary it by parol, was of course incompetent for either of the parties. It expresses, of necessity, the truth, and the whole truth about the matter. And it expresses, as clearly as language can, money paid, laid out, and expended by Hathaway, to and for the use of Millard and his companions, and at their request.

If Hathaway had sued them for the money, he should have sued for money paid, laid out, and expended. (Comyn on Contracts, 4th Am. edit. p. 451.) If Higuera, after receiving the money, had declined delivering the deed, Hathaway, not Millard, could have recovered it back from him as money had and received. If, before paying the money to Higuera, it had been stolen from Hathaway, he would have had no claim for it against Millard, Scott, and Scribner, for he brought them under no obligation to him till he had actually paid for the land for their account. And in such case an indictment against the thief would necessarily have charged the money as Hathaway's money.

It is plain, therefore, that there was no loan from Hathaway to Millard, Scott, and Scribner, and hence that it was Hathaway's money, not theirs, which paid for the land. In a word, the distinct declaration in the written contract, Exhibit No. 1, that Hathaway *had purchased the land and paid the money to Higuera for the account of Millard, Scott, and Scribner,* precludes them in any action (save a bill in equity to reform the contract) from giving any parol evidence to vary or explain it. When one man purchases and pays for land, and takes the title in the name of another, the law ordinarily implies a trust for the benefit of the one who purchased and paid, *because it presumes such to have been the intent of the parties.* But if their actual intent is shown to have been different, the presumption is destroyed, and no trust is then to be implied. (*Sidmouth* v. *Sidmouth,* 2 Beavan, 447; *Scawin* v. *Scawin,* 1 Young & Collyer, 65.)

An express contract being proved, the law will not raise any implied one, for that would be to presume against the fact as proved. *Expressum facit cessare tacitum.* (Broom's Legal Maxims, Am. Ed. 414.)

Now, in this case the proof was perfectly conclusive and uncontradicted; it is found by the Judge below, and is, in fact, the very corner stone of the plaintiff's whole case, that C. W. Hathaway was not to convey to Millard, Scott, and Scribner, until he had been repaid his purchase money. He made the purchase and payment " for their account" and benefit, and took the title, not on any implied trust for them, but on an express parol contract that he was to hold it on his own security. It is not claimed or pretended that he was under any obligation to convey till his advance was repaid him.

In conclusion, then, the trust which the plaintiff has here attempted to set up, is one required by the Statute of Frauds to be evidenced by the deed of the parties creating or declaring the trust. It is not a trust implied by law, for it rests on no implication whatever, but on the *express* contract of the parties. Such a contract is not only within the letter of the statute, but most obviously within the very mischief intended to be prevented by it.

But supposing C. W. Hathaway took a trust estate in the land for the benefit of Millard, there is an insuperable objection to the plaintiff's recovery in the plea of the Statute of Limitations.

It must be borne in mind that the object of the action is to compel E. V. Hathaway to convey the land on the ground that he took the title from C. W. Hathaway with notice of the trust. The plaintiff claims that E. V. Hathaway paid nothing for the land, and had notice of the trust. He, on the other hand, insists that he paid a valuable consideration for it, and that there was no trust in fact, so that it was not possible he could have notice of it.

The truth appears to be, that E. V. Hathaway paid C. W. Hathaway forty-five thousand dollars for his business, including his claims against the Millards and this land, and that he

had actual notice of the original transaction with Millard, Scott and Scribner, whatever it was. If it created a resulting trust, he took the land with notice of the facts from which that trust resulted. We assume then, for the purposes of this branch of the argument, that the original transaction gave rise to a trust. E. V. Hathaway has bought the land from the trustee with notice of the trust. He can be charged as a trustee by the plaintiff, but it is of necessity *in invitum.* It is not a trust resting in contract either express or implied, but arises purely and simply by *operation of law* and against the will of the trustee. In such case the Statute of Limitations begins to run from the moment of conveyance to E. V. Hathaway. (*Murdock* v. *Hughes*, 7 Smede & Marshall, 219 ; *Williams* v. *The First Presbyterian Society of Cincinnati*, 1 Ohio, 488.)

*A. M. Crane*, and *Edward Tompkins*, for Respondents.

In October, 1861, Hathaway held as a mere naked trustee. Every dollar of his loan, principle and interest, had been repaid. Millard owned the entire land. Hathaway's mortgage had been paid off, and he held the bare naked legal title. Millard had the whole interest in the land. It was his in equity, wholly and entirely.

Could his estate or interest in this land be conveyed or surrendered by parol, without writing? The sixth section of our Statute of Frauds (Wood's Dig. 106) would seem to be conclusive that it could not be done.

Plaintiff had a trust estate in the land, comprising its entire value. The words of the statute are very plain, viz. : "Nor any *trust* or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, *surrendered*, or declared, unless by act or operation of law, or by deed or conveyance in writing, subscribed by the party," etc.

It is argued by appellants that this trust, being created without writing, may be cancelled or surrendered in the same manner in which it was created. This we admit. But the trust was created by the "act or operation of law." Millard paid

the purchase money, and Hathaway took the deed.  Upon these facts the "operation of law" raised the resulting trust. This trust could no doubt be cancelled or "surrendered" in the same manner, *i. e.*, "by act or operation of law"—namely, Millard's trust estate might be extinguished or passed to another by judicial sale of his interest.  This would be by act of law.

Again : If Millard had stood by when C. W. Hathaway conveyed to E. V. Hathaway, and stated that he had no interest in or claim to the land, in such case his trust estate would have stood extinguished by estoppel.

Again : In case of Millard's death, intestate, the trust would "by operation of law," have passed to his heirs.

In these various ways, and others which might be named, the trust could be extinguished, assigned, or surrendered, "by act or operation of law."  But we utterly deny the proposition that the trust could be surrendered by a parol contract— the land all the time, and even until now, remaining in the full and entire possession of the plaintiff.  This trust could no more be conveyed by mere word of mouth than could a fee simple or freehold interest in the lands.  It occupies the same dignity, and is classed in the same category, by statute, with those interests.

But, as if to clinch the matter and close all question as to the meaning of the sixth section above quoted, we have section twenty-five, (Wood's Digest, 108,) which defines the terms before used, and the enactment is "the terms ' estate and interest in lands,' shall be construed to embrace every estate and interest, present and future, vested and contingent."

The Court below, in its opinion, after showing how the loan had been repaid in 1861, says :  "These payments satisfied in full the obligation of Thomas Millard, and from that time he was entitled to a conveyance."  This is common sense as well as law.  (*Sherwood* v. *Dunbar*, 6 Cal. 25.)

" Such trusts as are cognizable, and can only be enforced in equity, (our case) cannot, so long as they subsist, as between

trustee and *cestui que trust*, be reached by the Statute of Limitations." (Angel on Limitations, 161; *Kane* v. *Bloodgood*, 7 Johns. Ch. R. 90.) " In general, lapse of time is no bar to a trust clearly established to have once existed." (*Prevost* v. *Gratz*, 6 Wheat. 481.) " But if the trustee denies the right of his *cestui que trust, and the possession of the property becomes adverse*, lapse of time from that period may constitute a bar in equity." (7 Johns. Ch. R. 90.) " But it must be shown that an open denial of the existence of the trust has been brought home to plaintiff." (Angel on Limitations, 172, Sec. 9, last clause.)

To apply these principles to this case. So far from showing any denial of the trust on the part of defendants, we only propose to refer to a leading case, decided by Chancellor Kent nearly half a century ago, for the purpose of showing how entirely like, in its leading facts, that case was to this. We refer to *Boyd* v. *McLean*, 1 Johns. Ch. R. 582.

In that case, the Boyds contracted to buy the land of one Colden; in this case, plaintiff, Scott, and Scribner, contracted to buy of Higuera. In that case, the Boyds borrowed one thousand five hundred dollars of McLean to pay for the land; in this case, plaintiff and his associates borrowed eight thousand five hundred dollars of Hathaway for the same purpose. In that case, the deed was made directly from Colden, the vendor, to McLean, the money lender; in this case, the deed was made directly from Higuera, the vendor, to Hathaway, the money lender.

In that case, as in this, the defendant denied in his answer that he ever made any loan to plaintiff to enable him to pay for the land, but sets up, as in this case, that he bought the land with his own money, and on his own account, and that the deed to him was absolute, and not by way of security. The answer of defendant in that case, like that of E. V. Hathaway in this, (and the coincidence is remarkable,) sets up that about the time of the purchase he did make a verbal parol agreement with plaintiffs to sell them the land upon payment of one thousand five hundred dollars, and interest, in two

years.  In that case, as in this, the plaintiffs were in posses-
sion, and, as in this case, the answer sets up the Statute of
Frauds.  It perhaps would not be possible to find any two
cases in all the reports more exactly resembling each other in
all their leading facts.

Chancellor Kent decreed an accounting and conveyance.
We cite, also, the following authorities: *Bottsford* v. *Burr*, 2
Johns. Ch. R. 582; *Livingston* v. *Livingston*, Id. 409; 2 Story's
Eq. Juris. 1,201; *Osborn* v. *Endicott*, 6 Cal. 153; *Foot* v. *Col-
vin*, 3 J. R. 216; *Simson* v. *Eckstein*, 22 Cal. 580; *Bayless* v.
*Baxter*, 22 Cal. 575.

The appellants, in their brief, appear to lay great stress
upon the point that because there was a parol contract *defin-
ing the conditions of the trust*, or the *terms* upon which Hatha-
way was to convey the land, (*i. e.*, on the repayment of the
loan and interest,) that, therefore, the transaction loses its
character of an implied trust, and becomes an express trust,
resting in parol, and hence void by statute.

But this case of *Boyd* v. *McLean* is a full answer to this
objection also.  On reading the case, it will be seen that the
condition of the trust was that Boyd should repay the one
thousand five hundred dollars, and interest, in four years, upon
which the land was to be conveyed to him; *and this condition
or agreement rested entirely in parol.*  And also in the case of
*Bayless* v. *Baxter*, 22 Cal. 580, above quoted, it was argued
by counsel for appellants that because there was a verbal con-
tract to reconvey, that therefore there could be no *implied* or
resulting trust.  In reply to this, Mr. Justice Crocker (Cope
and Norton concurring) says: " The fact that defendant agreed
by parol to do what the law would compel him to do, (*i. e.*,
hold the title subject to the rights of the plaintiff, and convey
to them on demand after a certain time,) makes the trust none
the less a trust created by operation of law."  The principle
of both these cases is, that when a resulting or implied trust
has been created, the *conditions* or *agreement* upon which the
trust is to be executed may be shown by parol. (4 J. J.
Marsh, 593.)

17

By the Court, SHAFTER, J.

This action is brought to compel a conveyance of certain real estate, and for an account.

The complaint charges: "That in the year 1855 the plaintiff purchased of Fulgencio Higuera, and Celia Feliz de Higuera, his wife, a certain tract of land in the County of Alameda, and State of California, for the sum of eight thousand dollars. That the same was a part of the rancho known as the Agua Caliente Ranch, and was then the property of said Higuera and wife. That it was called two thousand seven hundred acres, but was defined by metes and bounds, set forth in the deed hereinafter mentioned, and actually contained about two thousand eight hundred and three acres. That plaintiff being unable to pay the sum of eight thousand dollars at the time himself, applied to the defendant, Charles W. Hathaway, then and since a resident of San Francisco, and requested him to lend the money to complete said purchase, which Hathaway agreed to do. That thereupon said purchase was concluded, and for the security of the said sum so loaned, and for no other purpose whatever, the deed from Higuera and wife for the said land was made directly to said Hathaway, and it was expressly agreed between him and said Hathaway that said Hathaway should hold the same until the said sum of eight thousand dollars was repaid, and that then he should convey the said land to the plaintiff. That the said deed to said Hathaway from said Higuera and wife was dated August 25, 1855, was duly acknowledged by them, and was recorded, at the request of the plaintiff, in Alameda County, on the 29th of August, 1855, in Liber D of Deeds, page 597, to which deed, or to a certified copy thereof, the plaintiff, for greater certainty, begs leave to refer. That all the negotiations in relation to the purchase of said property were had and made by the plaintiff. That said Hathaway knew nothing about them and had nothing to do with them, except that, at the request of the plaintiff, he paid the money and received the deed, as above stated. That plaintiff alone took charge of said land, except as is here-

inafter stated, and directed and controlled the same as the owner thereof. That said Hathaway did not interfere therewith, and that it was a matter of general notoriety, and well and publicly understood, that said plaintiff had become the owner of said premises; that about the time of making the said purchase the plaintiff agreed with Joseph Scott and Theodore H. Scribner that they might each share in the same to the extent of the one third part of said premises, they paying the consideration therefor to said Hathaway, to apply in the reduction of said loan; that he requested said Hathaway to convey to them the portions purchased by them; that a survey was made of said land, and the same was divided into equal parts, and the said Hathaway, at the request of plaintiff, and in fulfilment of his agreement with Scott and Scribner, did, by deed bearing date on the 13th of October, 1855, convey to said Scott the southerly one third of said land, so divided as aforesaid, the same being nine hundred and thirty-four and sixty-seven one-hundredths acres, more or less; that said deed was duly acknowledged by said Hathaway, and recorded in Alameda County, to which deed, for greater certainty, plaintiff refers; that in like manner, and at plaintiff's request, and in fulfilment of his agreement with said Scribner, said Hathaway did, by deed bearing date December 15, 1855, convey to said Scribner the one third part of said land; that on such partition was assigned to him, the same being also nine hundred and thirty-four and sixty-seven one-hundredths acres, more or less; that said deed was duly acknowledged and recorded—to which deed plaintiff refers; that the remaining nine hundred and thirty-four and sixty-seven one-hundredths acres was set off to the plaintiff on such partition; that the same was in two parcels; that five hundred and thirty-one and sixty-three one-hundredths acres was set off to the plaintiff from the northerly end of said tract, and was bounded southerly by the share so conveyed to Scribner as aforesaid, and the residue of one third, being four hundred and three and fourteen one-hundredths acres, was set off to the plaintiff between the two shares that were conveyed to Scott

and Scribner as aforesaid, and the two parcels — making together nine hundred and thirty-four and sixty-seven one-hundredths acres; that the plaintiff entered into possession thereof, and from that time to the commencement of this action has cultivated, occupied and enjoyed by himself or his tenants, the whole of the said northerly parcel of five hundred and thirty-one and sixty-three one-hundredths acres, and also the whole of the said four hundred and three and fourteen one-hundredths acres, until the same was sold by him, as is hereinafter stated. The said plaintiff further shows that the defendant, Edmund V. Hathaway, is the brother of and is and for many years has been, the partner in business of the said Charles W. Hathaway; that some time in the latter part of 1856, or early in 1857, said Charles proposed to leave the State of California and to be absent for a considerable time in the Eastern States; that he stated to the plaintiff that his absence might occasion inconvenience, in consequence of the title to the property being in him, and that to obviate the same, and to put it in a situation so that the same could be conveyed to the plaintiff in case he should wish to pay the balance of said original loan, then unpaid, he proposed to convey, and did convey to the said Edmund V. Hathaway, the said two parcels of land, so as aforesaid in said partition assigned to the plaintiff; that the deed thereof bears date on the 18th of November, 1856, and was recorded in said County of Alameda; that said Edmund well knew, at the time the said deed was given, that the title to said land was held by his brother in trust for the plaintiff; that no consideration was paid by him to said Charles therefor, to the knowledge or belief of the plaintiff; and the same was thenceforward held by him in the same manner, as it had before been held by the said Charles W. Hathaway, and the plaintiff remained in the possession and enjoyment of said premises in the same manner as he had been before said deed was given.

The said plaintiff further shows, that shortly prior to the 5th of March, 1861, he sold to Calvin Valpy the southerly parcel of said land, so as aforesaid assigned to him on the divi-

sion of the said property, containing four hundred and three and fourteen one-hundredths acres. That such sale was made by this plaintiff without any action or agency therein by said defendants or either of them. That at the request of the plaintiff, said Edmund V. Hathaway conveyed the same to said Valpy, by deed dated March 5, 1861, and recorded in Alameda County, to which the said plaintiff refers.

The said plaintiff further shows that all the consideration for the said sales to Scott, Scribner and Valpy, have been received by the said defendants, or by one of them. That the same amounts to much more than the eight thousand dollars originally loaned. That in addition thereto, one Richard Threfal, in or about the years 1860 and 1861, paid in to the defendants for account of plaintiff, different sums of money, amounting in the aggregate to over two thousand dollars. The plaintiff has trusted entirely to the said defendants to keep the accounts between them, and that he is therefore unable to state the precise sums that they have received from the said Scott, Scribner, Valpy and Threfal. That he has endeavored to obtain from them a statement of said accounts, but has been unable to do so, but he believes and charges the truth to be that they have been fully repaid the loan so made to him as aforesaid, and that the said account, if properly and justly made up, would show a large balance in his favor.

The said plaintiff further shows that the title to the remaining five hundred and thirty-one and sixty-three one-hundredths acres yet remains in the said defendants or one of them. That this plaintiff is yet in the full possession thereof, and that the following is a full description thereof according to the survey made at the time said land was divided as hereinbefore stated. [Description omitted.]

That the said plaintiff further shows that until within a few months he had well hoped that the defendants would give him a statement of said account, and would convey to him the said five hundred and thirty-one and sixty-three one-hundredths acres, as in justice and right they ought to do. That he has requested to have said account and to have said five hundred

and thirty-one and sixty-three one-hundredths acres conveyed to him, and has offered and is now ready, in case the said account, when correctly made, shall show that any sum whatever is due from him to the defendants or either of them, upon the said loan for which the said land was conveyed as security as aforesaid, to pay the same. That said account has not been furnished him, and they have required from him the payment of the sum of fifteen thousand dollars as a condition precedent to the conveyance of said property to him. That no such sum, and as he is advised and believes no sums whatever remain unpaid of said loan, or is due from him to the defendants or either of them. That the said claim and the refusal to convey without the payment thereof, are inequitable and unjust, and a violation of the trust under which said land was conveyed to defendants as above stated. That said land has now become of the value of fifteen thousand dollars and upwards, and that said Edmund V. Hathaway, as plaintiff is informed and believes, has recently declared his intention to move on to the said land and to take possession thereof, and thus to exclude this plaintiff therefrom, and has pretended that the same belongs to him and that plaintiff has no right to the same, and that plaintiff is fearful that he will attempt to deprive him of his interest in the said property unless prevented by the interposition of this Court.

Wherefore the said plaintiff demands for relief in this action:

First—That an account may be taken of said loan, and of the sums that have been received by the said defendants or either of them, from or on account of the said land, and particularly of the sums that have been received from the said Scott, Scribner, Valpy and Threfal, or any or either of them, and the balance thereof, and to whom the same is due may be ascertained and declared.

Second—That the said defendants and each of them may be decreed to convey the said five hundred and thirty-one and sixty-three one-hundredths acres of land by a good and sufficient deed to the plaintiff, free and clear from any liens or incumbrances thereon, if any such there be, that have been

caused or permitted by them, or either of them.   In case it shall be ascertained that any part of such loan is yet due or unpaid by the plaintiff, such conveyance to be conditioned upon the payment thereof by the plaintiff.   If the same shall be found to have been paid in full, then such decree to be absolute.

Third—That any balance found due the plaintiff upon such accounting may be ordered to be paid to him, and that he may have judgment therefor against the said defendants, or either of them, as shall be just.

Fourth—That he may have such other or further decree or relief herein as shall be agreeable to equity, with costs.

The defendants answered severally, denying all the allegations of the complaint, though they admit the plaintiff to be in possession of about twenty acres in the northeast portion of the tract.

For further and separate answer the defendants allege that the purchase from Higuera and wife was made by Charles W. Hathaway for eight thousand dollars, and that the purchase money was paid by him.   That at the date of the purchase, and for a long time prior thereto, the plaintiff and his brother, Stephen W. Millard, were jointly indebted to said Hathaway in the sum of seven thousand five hundred dollars cash advances, and that he thereafter, at the request of the two brothers, agreed with them verbally, but without consideration, that whenever they paid him what they owed him (seven thousand five hundred dollars,) and also one third of the purchase money of the land paid Higuera, and also any further advances which said Hathaway might thereafter make to the said Millards, with interest on said several sums at the rate of two per cent per month, payable monthly, and if not so paid then to compound, that he would convey to them one third of the premises in controversy.   That at the same time said Hathaway agreed verbally with Scott and Scribner to convey to them certain portions of the premises, amounting to about two thirds thereof, upon payment of a certain stipulated price therefor, and that said Hathaway, upon payment of the price so agreed

upon, duly conveyed such portions to said Scribner and Scott; but no agreement was ever had between plaintiff and said Hathaway that the sums of money so received should be applied in the reduction of the joint indebtedness of the Millards to him or towards the purchase price of said lands. That the Millards were let into possession of about one third of the premises upon a verbal agreement that they should pay said Hathaway interest upon the amount of said indebtedness (seven thousand five hundred dollars,) and upon one third of the sum of eight thousand dollars, and upon further advances in manner aforesaid. That the Millards continued to occupy under said agreement. That on the 18th of November, 1856, said C. W. Hathaway conveyed said lands to said E. V. Hathaway for ten thousand dollars paid, less what had been previously deeded to Scott and Scribner. That between the time of said verbal agreement and the conveyance to E. V. Hathaway, said C. W. Hathaway advanced large sums to the Millards and sold and delivered to them large amounts of goods, wares and merchandise, and at the time of the conveyance by C. W. to said E. V. Hathaway, the former assigned to the latter all the indebtedness due from the said Millards to the said assignor. That in January, 1860, Stephen W. Millard removed to Pajaro, and that the plaintiff at the same time abandoned all of the premises in controversy, except an orchard and a vineyard, containing about twenty acres, in the northeastern part of said tract. That immediately thereupon the said E. V. Hathaway leased the whole of the premises, except said twenty acres, to divers persons, and from year to year has leased the same, and collected and received the rents therefor. That the plaintiff herein continued in the occupation of said twenty acres until August, 1861, when he delivered the same to said E. V. Hathaway, and removed to Pajaro also, where he continued to reside until about the commencement of this action, when he returned and took forcible and unlawful possession from defendant, E. V. Hathaway, of said twenty acres. That at the time plaintiff removed to Pajaro an account was stated, in the premises, between him and said E. V. Hathaway,

whereby there was found due said Hathaway the sum of forty-one thousand six hundred and eighty-seven dollars and twelve cents, ten thousand dollars whereof were cancelled by him, and in consideration thereof the plaintiff released the said Hathaway from the aforesaid verbal agreement with C. W. Hathaway, and of and from all claim, or right, title, or interest in said lands; that the sale to Valpy was made by E. V. Hathaway alone, and that the lands rented to Threfal were so rented on his behalf; that while said plaintiff was upon said premises the defendants forwarded to him monthly accounts, which were received by plaintiff and not objected to by him, and that they showed the aforesaid balance due to the said E. V. Hathaway.

In further answer, the defendants submit that the complaint states a trust created by parol only.

And again, they allege that the agreement set out in the complaint was but a parol agreement for the sale of lands, and is, for that reason, null and void. And they also plead that more than four years have elapsed since the making of the agreement, and since any cause of action accrued thereon.

The trial was by the Court. The finding was for the plaintiff on all the issues, and judgment was duly entered thereon. The appeal is from the judgment and from an order denying defendants' motion for a new trial.

First—As to the appeal from the judgment, it must be determined upon the judgment roll alone, and as no errors therein have been either assigned in the record or suggested in the argument, we must consider the judgment as free from objection.

Second—As to the appeal from the order overruling appellant's motion for a new trial.

1. Counsel for respondent insist that the document contained in the transcript purporting to be a statement on new trial, cannot be recognized by us; and the first reason assigned is, that the statement and the exhibits annexed thereto, do not appear or purport to have been filed in the Court below.

The statement on new trial was duly settled by the Judge,

18

and the clerk certifies that the statement was filed, without, however, stating the time when. But the respondent is precluded from saying that the statement was not filed in time, for it appears by the order denying the motion for new trial that "the motion was submitted upon the foregoing statements and affidavits by consent of the respective attorneys herein." (*Reynolds* v. *Harris*, 14 Cal. 667; *Dickinson* v. *Van Horn*, 9 Cal. 207.)

It is further insisted that the transcript fails to show any order overruling the motion for a new trial. This objection is also founded upon a misapprehension of the effect of the clerk's certificate to the transcript.

It is further insisted that the notice of intention to move for a new trial does not appear ever to have been filed or served. This objection is met by the facts referred to in our answer to the first objection.

2. The motion for new trial, as appears by the statement, was made upon the ground: First, of irregularity in the proceedings; Second, accident and surprise; Third, newly discovered evidence; Fourth, insufficiency of the evidence to justify the findings, and that they are against law; Fifth, errors of law occurring at the trial and excepted to by the defendants. Under each of the last two heads, there is a specification of grounds, as required by the Act of 1864, and to them, or rather to such of them as counsel have relied upon in argument, our attention will be exclusively confined.

There are three questions raised by the appellants which relate to the case made by the plaintiff at the trial: First—What kind of trust did the plaintiff's evidence tend to prove? Second—Is the trust found by the Court identical with the one declared on and with the one which the evidence tended to prove? Third—Was that trust, and the fact that the plaintiff had discharged all his obligations under it so as to entitle himself to a deed, found upon legal and sufficient evidence?

The relation of trustee may be constituted not only by the express declaration of the parties but also by implication or

construction of law.  Trusts of this description are either implied, or presumed, from the supposed intention of the parties, and the nature of the transaction; when they are known as "resulting trusts;" or they are raised independently of any such intention, and forced on the conscience of the trustee by equitable construction, and the operation of law; and such are distinguished as "constructive trusts." (Sto. Eq. Juris., Sec. 1,195.)  These trusts are expressly exempted from the operation of the Statute of Frauds. (Wood's Dig., p. 106, Sec. 6.)  It is well settled as a general rule that when upon a purchase of property the conveyance of the legal estate is taken in the name of one person, while the consideration is given or paid by another, a resulting or presumptive trust immediately arises by virtue of the transaction, and the person named in the conveyance will be a trustee for the party from whom the consideration proceeds.

The complaint alleges, as the foundation of the trust upon which the plaintiff relies, that in the year 1855 he contracted with Higuera for the land in controversy for eight thousand dollars; that C. W. Hathaway, on being applied to, agreed to loan the plaintiff the money to enable him to complete the purchase; that Hathaway, "at plaintiff's request, paid the money," and by agreement took a conveyance from Higuera to himself, "as security for the sum so loaned."  The evidence of the plaintiff tended to prove the purchase as alleged—the contract of loan alleged—that the money was counted out by Hathaway to one Smith, who had acted in the purchase from Higuera as the agent of both parties, and that Don Diego Forbes, "who had received the money from plaintiff, Scribner and Scott," jointly interested in the purchase and loan, paid it to the vendor in the presence of Smith, Scribner and Scott.

There is no substantial variance between the evidence and the complaint.  The allegation is that the money was "loaned" to plaintiff, which imports that the contract to loan was fully executed by a delivery, in legal effect, of the money by Hathaway to the plaintiff; and the subsequent averment that Hathaway "paid the money to Higuera at plaintiff's request," is

but an averment that after the relation of debtor and creditor had been established between the two, or contemporaneously therewith, that Hathaway performed the mere manual service of delivering the money to the vendor. Passing the question of variance, the facts of the transaction which the plaintiff's testimony tended to prove, were a loan of eight thousand dollars, consummated by a formal delivery of the money by the lender to the borrower, and a payment by him to the vendor of the land, he conveying the land to the lender of the money as security for the payment of the loan. These facts being assumed, or given, a trust resulted at once in favor of the plaintiff by implication of law, to be executed according to the stipulation of the parties. The evidence of the plaintiff went to the very facts upon which that class of trusts is raised. We do not think it important to examine the question at length upon authority, for upon the proofs of the plaintiff the case is plainly one of implied trust upon principle. In support of our conclusion, however, we cite *Boyd* v. *McLean et ux.* 1 John Ch., 582. The facts of that case are, substantially, the facts of this, and there is a like resemblance between this and the case of *Page* v. *Page*, 8 N. H. 187, and of *Cameron* v. *Ward*, 8 Geo. 245.

We further consider that the findings follow the issues raised upon the complaint, and as a demurrer would not lie to the one, so judgment could not be arrested upon the other. It is urged that the findings contradict each other as to whose money paid for the land. The findings are not irreconcilable with each other on that point. It is true that the third finding states that Hathaway paid the money to Higuera, still, it is further found that it was after the eight thousand dollars had been "loaned" by Hathaway to the plaintiff on the security of the title. It is of no consequence, in our judgment, who paid—or, rather, who "paid over" the money to Higuera—so that the relation of lender and borrower arose between Hathaway and the plaintiff before the payment, or *eo instanti* it was made. The findings of a Court cannot be altogether detached from each other, and considered piece-

meal. If a particular finding be doubtful or obscure, reference
may be had to the context for the purpose of ascertaining the
true meaning.

It is further urged that the finding of the trust was against
law; and, first, for the reason that the finding was upon parol
evidence; and, second, for the reason that it is against written
evidence introduced, by which the plaintiff is estopped.

The question of whether the facts of an implied trust can
be proved by parol, requires no discussion.

The written document referred to was executed on the same
day as the deed from Higuera to Hathaway, and is as follows:

"SAN FRANCISCO, August 25, 1855.

"Whereas, Charles W. Hathaway has paid the sum of eight
thousand dollars for the purchase of a piece of land, situated
in Alameda County, and the satisfaction of a mortgage thereon,
said land being known as the Augua Caliente Rancho, and has
accepted our draft in favor of Henry C. Smith for five hundred
dollars, said purchase, payment and acceptance being for the
account of the undersigned, T. H. Scribner, Joseph Scott and
T. W. Millard, jointly and severally interested one third each;
now, therefore, we T. H. Scribner, Joseph Scott and T. W.
Millard, hereby agree to repay to the said Charles W. Hatha-
way the above named sums of eight thousand dollars and five
hundred dollars, with interest at the rate of three per cent per
month until paid, together with any expense he may incur in
the matter of this aforesaid purchase, and do also warrant and
do hereby agree to defend him and save him harmless from
any and all suits, claims and demands, of whatever name or
nature, made against the said property or made against him in
consequence of this purchase as aforesaid.

"JOSEPH SCOTT,
"T. H. SCRIBNER,
"T. W. MILLARD."

It is said, in the first place, that the payment of the money
by Hathaway is established as a fact by this paper. The pur-

port of the document is that the money was paid by Hatha-way for and on account of the persons who signed it, and who bind themselves to pay interest on the money until they shall have repaid the amount.    These facts cannot be reconciled with the hypothesis that Hathaway bought and paid for the lands on his own account, and with a view to a resale to the plaintiff.    The agreement to repay, and to repay with interest, is decisive that plaintiff and Hathaway, by the advance of the money, were, in their understanding of the matter, brought presently into the relation of creditor and debtor.    (*Hickox* v. *Lowe*, 10 Cal. 197.)    Nor is the fact that the deed from Higuera to Hathaway recites that the purchase money was paid by Hathaway conclusive upon the question.    The recital may be explained or contradicted by parol.    The point has heretofore been greatly controverted, but it is now settled by a weight of authority that at once precludes us from regarding the question as an open one, and relieves us from the necessity of doing anything more than referring to an accredited text book in which the cases are collected.    (Hill on Trustees, 130–133.)

But it is further contended that the facts of the trust alleged were found upon insufficient evidence, even if the whole of the evidence should be assumed or be admitted to be lawful.

In a case like the present the party alleging the implied trust must prove clearly that the purchase money belonged to him ; and if the evidence is merely parol it will be received with great caution, and the Court will look anxiously for some corroborating circumstances to support it.    (*Levich* v. *Levich*, 10 Ves. 517.)    We are not prepared to say that the finding of the Court here, does not rest on a basis of proof as broad as the rule contemplates.    The fact that the land was paid for with money loaned by Hathaway to the plaintiff for that pur-pose was the governing question to be investigated ; and the particular manner in which the money was manipulated, was, comparatively, of little concern.    On the main question as thus stated, there was, on the one hand, the recital in the deed of Higuera that the money had been paid by Hathaway,

grantee therein, and on the other it was confronted by the testimony of Millard, Scott, Smith, Higuera, Davis, Beard and the written contract of August 25th, already copied into this opinion, showing that the land was paid for with money borrowed by the plaintiff of Hathaway, resulting in establishing the relation of creditor and debtor between them. It is not our purpose to argue this point at length upon the evidence. There was other evidence introduced by the parties respectively which bore with greater or less directness and force upon the question. We have examined the whole of it, and in the light thrown upon it by the searching analysis to which counsel on both sides have subjected it, and we are satisfied that the rule of evidence before stated, was not overlooked nor disregarded by the Court in the conclusion to which it came, viz : that, to a legal intent, the plaintiff and the plaintiff's money paid for the land.

But it is further contended on the part of the appellants, that if the purchase money was in fact paid by the plaintiff, there could be no trust by implication as against Hathaway, for the reason that it was expressly stipulated that that which it would otherwise have been Hathaway's duty to do on demand—convey the land to the plaintiff—might be deferred by him, as matter of right, until his loan should be repaid. In support of this position counsel cite the maxim *Expressum facit cessare tacitum.* The principle contended for seems to be that the law will not imply at all if parties presume to narrow its implication by stipulation; but the maxim relied upon inculcates no such doctrine as that. In strictness, all that appertained to the case of the plaintiff, was to show that he paid the purchase money. That fact being established, the law would imply a trust, to be executed by a conveyance to the beneficiary on request. As against this conclusion the defendants allege, or, what amounts to the same thing, the plaintiffs admit, that it was expressly stipulated that the execution of the trust should be postponed for the benefit of the trustee until a certain event should happen; and the argument is that the controlling fact that the purchase money was paid

by the plaintiff, was thereby at once divested of all significance, and became so utterly obsolete, that after the event stipulated had transpired, the fact that the plaintiff paid the purchase money, could not be brought forward and put to use. The difficulty, however, if there be one, is overcome by *Page* v. *Page*, 8 N. H. 187 ; *Boyd* v. *McLean*, 1 John. Ch. 582 ; *Cameron* v. *Ward*, 8 Geo. 245, and by the maxim *Expressum facit cessare tacitum* in the true reading of it. (Broom's Maxims, p. 414.) There is nothing in the stipulation going to the " creation " of the trust, and the loan named in it having been repaid, the case stands as though the stipulation had never been made.

The questions remaining to be considered relate to the case made for the defense.

It is alleged in the answer that after the conveyance by C. W. to E. V. Hathaway, the plaintiff "released and discharged him (E. V. Hathaway) from all claim, right, title in and to said described lands." This defense presupposes that the trust laid in the complaint once existed, and seeks to avoid it on the ground of the new matter stated. The burden of proving the defense was with the party alleging it. The Court has found against the allegation directly, and when specially moved to amend its conclusions of fact by finding that the release was at least proved by parol, the motion was denied. We have attentively examined the parol proofs as they stand related to the question. Parol evidence was freely introduced on both sides, and we are satisfied that the preponderance is with the result that the Court arrived at. But if the Court refused to find the release or discharge alleged on the ground that the fact could be proved by written evidence only, as is claimed by the appellants, still we consider that the Court did not in that particular mistake the law. As already remarked, the defense went upon the supposal that the plaintiff had originally an equitable estate in the land, but maintained that the estate had become extinct by release or surrender to the holder of the legal title. A release is not " by act or operation of law," but by the act of the party releasing,

and therefore the act can be proved only "by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing." (Wood's Dig. 106, Sec. 6; 107, Sec. 21; 108, Sec. 25.) It is to be observed that the point of the defendants' averment was not that the character of the event upon the happening of which the obligation of the trustee to convey was originally to mature, had been altered or shifted; for that might well have been, and the equitable estate survive, but that the estate itself had been destroyed.

The plea of the Statute of Limitations raised the question whether more than four years had elapsed since the plaintiff's right of action accrued and before the suit was brought. By the assignment of the debt, incurred by reason of the loan, and by the conveyance of the land by C. W. to E. V. Hathaway, who took with notice, the latter was placed in the shoes of his assignor and grantor. The rights of the plaintiff were neither increased nor diminished by reason of the transfer. If the transfer had not been made, the plaintiff could have had no right of action against C. W. Hathaway until after repayment of the borrowed money, and the same is true as to his assignee. The debt incurred by the loan was not fully paid off until the 31st of March, 1861, and the action was commenced January 9, 1863. To this it may be added, that there was evidence in the case tending to prove that E. V. Hathaway recognized the trust in repeated instances in 1860–'61, and that he never disavowed it until after the debt had been fully extinguished. As to the possession of the land, the tendency of the evidence was that it had been in Millard or his tenants since 1855.

As to the objection that all of the plaintiff's interest in the alleged trust had passed to his assignee in insolvency before this action was commenced, it is sufficient to say that in the specification of grounds to be relied on in support of the

19

motion for new trial, the point is not made, and therefore it cannot be considered.

Judgment affirmed.

By the Court, SHAFTER, J., on petition for rehearing.

It is insisted that the decision is opposed to *Cunningham* v. *Hawkins*, 24 Cal. 406, so far as the defense of the Statute of Limitations is concerned. It was held in that case that the mortgagor, after the lapse of four years, lost the right to pay or tender the mortgage debt in exoneration of the land mortgaged. But it does not follow from that, that a mortgagee loses either the power or right to accept payment of the debt after the statute has run upon it; and should he do so, then, the debt being extinguished by the payment, the land would be disencumbered by the direct force of the fact, and no bill to redeem would be either necessary or possible. In this case it may be admitted that Hathaway could not have compelled a repayment of the borrowed money after the four years had run, and that after that date the plaintiff had no power to make an effective tender. But the defendant was at liberty to accept payment in full, and having chosen to do so, he cannot relieve himself of liability to execute the trust according to its terms, on the ground that he might have refused to take the money. By force of the stipulation of August 25, 1855, no action could accrue to the plaintiff to compel a conveyance until the whole of the borrowed money had been repaid. After the lapse of four years it rested with Hathaway to say whether that event should ever happen or not. By his own voluntary action he allowed it to happen, and then, for the first time, Millard was clothed with a right of action against him. This is an answer to the objection that Hathaway never promised in writing to execute the trust. No written renewal is necessary to save a claim from the bar of the statute, in case the statute has not run upon it at the time when an action is brought to enforce it.

We have not overlooked the point made for the appellant,

that C. W. Hathaway by conveying to E. V. Hathaway " asserted a right in himself adverse to his *cestui que trust*, and that the latter came in as a stranger asserting a right in himself, also adverse in its character." The proposition was fully considered, and was replied to, not directly, to be sure, but by advancing another proposition presenting the law of the facts stated as understood by us. In the pressure of business we often find it necessary to meet views presented by counsel by giving a direct exposition of our own.

By the expression " that the tendency of the evidence was that the possession of the land had been in Millard or his tenants since 1855," we would be understood to mean that there was evidence in the case tending to prove the fact, and that we could not readjudge the question upon the testimony. But we do not consider that it is a matter of any moment whether E. V. Hathaway was or was not in possession after the conveyance of the land and the assignment of the debt to him, for there is no plea that E. V. Hathaway had been in adverse possession of the land for five years.

It is urged that " a parol discharge of a written contract is available in equity to repel a claim upon that contract." We have not time to enter upon a critical examination of the authorities bearing upon that question; nor do we consider it at all material to do so. In the first place, we are not dealing with a contract " within the Statute of Frauds," but with a trust confessedly without it; and, in the second place, our statute expressly provides that the trusts to which it belongs can be surrendered only by act and operation of law, or by deed signed by the party, or by his agent thereunto duly authorized in writing. This provision, in our judgment, settles the question.

The Court below has found directly, that the borrowed money had all been repaid with interest at the rate of three per cent per month, as stipulated in the contract of loan. There was a conflict of evidence upon the point, and we are satisfied with the result at which the Court arrived; and if we were not entirely satisfied with it, we could not, as the bar is

fully advised, readjudge the question upon the testimony. In a large proportion of the cases that come to this Court, we are invited and urged to reverse judgments on the ground that the conclusions of fact arrived at are not justified by the evidence; but under the settled practice of this Court, such attempts must always prove abortive, except in extreme cases.

In the opinion delivered, we said nothing about the newly discovered evidence as a ground of new trial, for the reason that the counsel of the appellants made no allusion to it in either of their briefs. In the first place, it is admitted in both answers, in effect, that the eight thousand five hundred dollars and interest was paid and received on account of the land contract; and assuming that to have been the fact, we do not consider the general business relations of the two Millards to have been a material question. And in the second place, the evidence alleged to be newly discovered, is merely cumulative, and does not fall within any of the exceptions to the general rule prohibiting the granting of new trials on the ground of newly discovered evidence of that character.

Rehearing denied.