[Civ. No. 12906.   Second Dist., Div. Three.   July 8, 1942.]

ALBANO VALERIO LUIZ, as Administrator With the Will Annexed, etc., Appellant, v. QUEEN OF ANGELS HOSPITAL (a Corporation), Respondent.

Marcus, Rabwin & Nash for Appellant.

Joseph Scott and J. Howard Ziemann for Respondent.

BISHOP, J. pro tem.—Following the course set by the familiar principles "that if there is any substantial evidence supporting the judgment it must be affirmed, that all reasonable inferences supporting the judgment must be given effect, and that with conflicts in the evidence, this court is not concerned. . . ." (*Gates* v. *McKinnon* (1941), 18 Cal. (2d) 179, 180 [114 P. (2d) 576]), we have arrived at the

conclusion that in this action to recover property and money transferred to the defendant the judgment denying the plaintiff any relief should be affirmed.

There is no great conflict in the direct evidence; such conflict as exists is found mostly among the inferences. Mrs. Mary McLeod, for whose estate the plaintiff appears as administrator with the will annexed, entered the hospital of the defendant corporation on April 19, 1939. As Mrs. McLeod had no physician of her own, Dr. Charles M. Hayes, whose name was next upon the list of the hospital's attending staff, was called by the hospital and took charge of her case. Mrs. McLeod, when she entered the hospital, was somewhere around 75 years of age, quite feeble and very sick, indeed so sick that during the first few days after her entry she was, at times, irrational, and at all times was physically weak. On May 12, she entered into an agreement, prepared by the defendant's attorney, wherein it was recited that Mrs. McLeod desired to buy and the defendant was willing to sell her a "life home" in the hospital, and whereby the defendant agreed to provide room and board, medical care, "including doctors bills, drug supplies," etc., and to defray all necessary expenses incident to the death of Mrs. McLeod, in consideration of her deeding to the defendant a parcel of land and of her transferring to the defendant her savings account. On the afternoon of the same day the savings account in the sum of $2,729.31 was effectively transferred to the defendant and ten days later Mrs. McLeod executed a grant deed conveying to the defendant the property on which she had made her home for over thirty years, an improved lot worth $3,500. Mrs. McLeod died June 9, 1939.

We shall presently note further evidence, but this suffices as a background for the major premise of most of plaintiff's argument, a premise which is best expressed in the language of section 2235, Civil Code: "All transactions between a trustee and his beneficiary during the existence of the trust, or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into by the latter without sufficient consideration, and under undue influence." Having in mind the provisions of section 2219, Civil Code, that: "Everyone who voluntarily assumes a relation of personal confidence with another is deemed a trustee, within the meaning of this chapter . . ." plaintiff's minor premise is that the defendant

was a trustee, with Mrs. McLeod its beneficiary, because of the relationship of hospital and patient that existed.

■ Plaintiff's counsel cite no authority for the proposition that the relation of a hospital and patient is a confidential one, and indeed, in their reply brief, they depart from the argument earlier made, by stating ''The relationship of hospital and patient is not *per se* a fiduciary or confidential one.'' We are in accord with this statement. That the relations of physician and patient, and of attorney and client, are *per se* confidential is well recognized (12 Cal. Jur. 713, et seq.). It is for this reason that corporations cannot act as physicians or attorneys, as appears in this quotation from 6A Cal. Jur. 1260, found in *Pacific Employers Ins. Co.* v. *Carpenter* (1935), 10 Cal. App. (2d) 592, 596 [52 P. (2d) 992] : ''A corporation is incapable of the relation of personal confidence and trust requisite to the attorney's relation to his client, and this is also true of the other professions in which there is a personal confidence.'' We entertain no doubt that a hospital-corporation may, through its officers or other agents, gain and abuse the confidence of one of its patients, entitling that patient to relief. In an action seeking relief, however, the patient has the burden of establishing the confidential relationship as a fact; it would not appear to exist as a matter of law, as in the case of an attorney and client or physician and patient. As will appear from the evidence about to be reviewed, the trial court was warranted in concluding, as we must infer that it did, that no confidential relation between the defendant and Mary McLeod in fact existed. (No allegation that it existed was made in the complaint, so that no express finding was required and none was made on the subject.)

We do not find it necessary, however, nor are we content, to rest our decision solely on the conclusion that no confidential relation was shown to exist between the hospital-corporation and Mary McLeod. ■ It is clear that even if we should assume that there was a confidential relation which would give plaintiff the benefit of the presumption that the consideration for the transfer of her property was inadequate and the agreement the result of undue influence, even so the judgment withstands plaintiff's challenge. The presumption of section 2235 is a disputable one. (*Schurman* v. *Look* (1923), 63 Cal. App. 347, 356 [218 Pac. 624] ; *Brown* v.

*Canadian Indus. Alcohol Co.* (1930), 209 Cal. 596, 599 [289 Pac. 613].) In the case under review the trial court found against it. Among other like findings we note this one: "It is true that at the time of the execution of said agreement of May 12, 1939, and at the time of transfer of said sum of $2,729.31 and at the time of the execution and delivery of said deed to said defendant, Mary McLeod was mentally capable and competent to execute said transactions and knew and fully understood and appreciated the full nature and extent of said transactions, and that she acted of her own free will and at her own instance without any undue influence, coercion inducement or persuasion by or of the defendant or its agents or employees."

█ There is ample evidence to support this finding. In making it the trial court doubtless recalled that there was not a word of testimony to suggest that anybody had planted in Mary McLeod's head the idea of transferring her property to the hospital, but that all of the testimony was to the contrary. Dr. Hayes testified that after Mrs. McLeod had been in the hospital a few days or a week "she told me that she wanted to give her property and her money to the Sisters to keep her . . . for the rest of her life." "She wanted me to have the good Sister . . . come up." No suggestion about the matter had been made by the doctor, and he "didn't pay a whole lot of attention to it on the first occasion." She spoke of the matter and the doctor told Sister Alberta, the sister superior in charge of the administration of business affairs of the hospital, about Mrs. McLeod's desire. Sister Alberta did nothing about it until after Dr. Hayes spoke to her a second time three or four days later. Sister Alberta then called on Mary McLeod, whom she saw on only three occasions while she was in the hospital, and heard from her lips that she wished to stay in the hospital, and "you will take care of me, will you, for what I will give you?" As the sister left the room Mrs. McLeod's parting words were: "Call your lawyer."

The trial judge was warranted by the evidence in concluding not only that the idea originated with Mrs. McLeod, but that it continued to remain her idea, and further that she was mentally competent as she carried it into execution. That evidence which could have cast a doubt on her ability to comprehend what she was doing came mostly from the plaintiff. He told the trial court that Mary McLeod was mentally

capable on April 22, when she made a will naming the plaintiff, who was, possibly, a distant relative, as her sole legatee, and she was still competent May 5, when she gave him a power of attorney to draw on her commercial bank account, but thereafter she failed steadily and was not competent on May 12 or subsequently. Two of her neighbors, after several visits at the hospital, occurring near but none of them on May 12 or 22, concurred in the view that she was not competent.

The trial court, however, also heard the accounts of Dr. Hayes, of the sister superior, of the attorney who drew the agreement, of the bank teller who talked with her before he turned over the proceeds of the savings account, of the attorney who acted as notary when she executed the deed, as to what she said and responded as they conversed with her about her property and her reiterated desire to make a "gift" of it to the defendant. The trial judge heard that her attention had been called to the effect of the documents she was about to or had just signed, and that to repeated questions she replied that she knew what she was doing and desired to do it. Not on just one occasion but at intervals of days she evinced her knowledge of what property she owned, of her desire to agree, then of her knowledge that she had agreed, to transfer it to the defendant. ". . . it does not follow from the mere fact that a person has reached or passed the allotted three score and ten years in age, that he has become mentally weak to the extent that he is rendered incapable of attending to his important business affairs intelligently or with full understanding of the nature thereof. . . . Nor does the fact that the grantor was afflicted with a serious physical malady at the time of executing the grant itself warrant the conclusion that he was mentally incompetent to transact the business culminating in the execution of the grant." (*Johnson* v. *Studley*, (1926) 80 Cal. App. 538, 559 [252 Pac. 638].) From the witnesses' narration of what took place the trial judge could properly infer that one who showed the grasp of her affairs that Mrs. McLeod did, although physically weak, ill and tired, was sufficiently strong mentally to comprehend what she was doing. In addition to the inference he could draw from what he had been told of Mrs. McLeod's responsiveness, the trial judge had Dr. Hayes' unequivocal statements that Mrs. McLeod was "perfectly rational" and "absolutely rational," except for a few days when she first entered the hospital and then a few days before her death.

■ The plaintiff argues that the defendant dealt unconscionably with Mrs. McLeod because Dr. Hayes and Sister Alberta knew that Mrs. McLeod had not long to live, a few months at the most, but failed to tell her so; and that the consideration that the defendant could render, in view of her short span of life, was grossly inadequate for the transfer of property worth almost $6,500. Had the trial court taken the view of the transaction which the plaintiff takes, that is that it was "purely a business one," the argument would be more persuasive. But it is apparent that the trial judge with reason could, and did, view the transaction in a different light. To him it appeared that Mrs. McLeod acted not with unmixed motives; that while her desire to be cared for for the rest of her life was a motive, it was not the sole material one. She had, it will be remembered, three days after entering the hospital made a will in which the plaintiff was named sole legatee. Thereafter, according to the testimony of Dr. Hayes, she stated that her primary purpose in giving a part of her property to the defendant was to keep it from going to the plaintiff. Mrs. McLeod was, moreover, a member of the religious organization that controlled the hospital. In her frequent use of the word "give," with respect to the transfer of her home and the savings account to the defendant, the trial court could perceive that Mrs. McLeod was not interested in obtaining care at the lowest price possible, not because she was not mentally capable of being interested in making a good bargain but because that was not what was on her mind. She wanted to be sure that upon her death proper steps would be taken, and that until her death she should receive proper care, it is true, but she wanted more than this; she wanted the defendant and not the plaintiff to receive that which she considered to be not merely a payment but essentially also a gift. In the premises it is not for us to say that the trial court erred; that the deal was a business transaction in which Mary McLeod was overreached. Nor do we doubt that the trial judge concluded correctly that the failure of Dr. Hayes and Sister Alberta to tell Mrs. McLeod that in their opinion she was about to die was not, under all the circumstances, a reason for setting her gift aside.

■ The plaintiff further calls attention to the fact that the defendant knew that the plaintiff had been authorized to pay her bills, and argues that he should have been notified that she was intending to and had conveyed most of her property to the defendant. It must have seemed obvious to the trial

court that under the circumstances, as related to it, the defendant was under no duty of notifying the plaintiff that Mary McLeod desired to and had accomplished the purpose of reducing the amount he was to receive on her death. If the idea back of this contention is the same as that argued elsewhere, that it was denying Mrs. McLeod independent advice, it carries no conclusive weight. In the first place, the plaintiff himself was a frequent visitor, and if she declined to converse with him that was her privilege, not the defendant's fault. Two neighbors also called. There were present from time to time in addition to Sister Alberta, Dr. Hayes and Mr. Ziemann, a notary public (from Mr. Ziemann's office, it is true) and the bank teller. ''The claim that independent advice is a prerequisite in such a transaction, even if sound, is amply overcome by evidence that the decedent acted advisedly and in the presence of witnesses in making the gift . . . Besides, independent advice is but a circumstance and is not necessarily a determining factor in such a transaction. (*Brown* v. *Canadian, etc. Co.*, 209 Cal. 596 [289 Pac. 613].)'' (*Burnham* v. *Witt*, (1933) 217 Cal. 397, 398 [18 P. (2d) 949].)

We are not persuaded that the judgment should be reversed. It is affirmed.

Schauer, P. J., and Shinn, J., concurred.