[Civ. No. 7077.   Third Dist.   Nov. 25, 1944.]

J. R. NICOLDS, Appellant, v. GUSTAVE STORCH et al.,
Respondents.

Whitehurst & Logan for Appellant.

Edward T. Taylor and John E. Griffin for Respondents.

ADAMS, P. J.—Plaintiff sued defendants, seeking to establish in himself and defendant Gustave Storch, as copartners, ownership of certain real and personal property standing in the name and in the possession of defendant Peter Storch. His complaint alleged the creation of the partnership between him and Gustave Storch in February, 1936, to conduct the business of producing and marketing fruit and the carrying on of such business; that during the existence of said partnership the partners desired to purchase certain described property, hereinafter referred to as the peach orchard, together with certain farming implements, for the sum of $9,200; that not having sufficient funds to make said purchase it was verbally agreed between them and defendant Peter Storch that the latter would lend the two partners $9,200 for such purpose, and that the property should be conveyed to Peter

Storch as security for the money so loaned, and that Peter Storch should hold the same in trust for the copartners until they should repay said $9,200; that Peter Storch should borrow for the benefit of the copartnership a portion of the purchase price and advance the balance from his own funds, and that the copartnership should pay interest, taxes on the property, and all costs of upkeep, and should occupy same as partnership property; that pursuant to said agreement Peter Storch purchased the property by borrowing $5,400 from a bank, securing said loan by a deed of trust upon the land, and by paying the balance from the proceeds of his unsecured promissory note and his own funds; that plaintiff and Gustave Storch then entered into possession of the property and operated same as partnership property except as to a portion thereof that was sold by consent of all parties. The complaint then alleged that Gustave Storch became involved in matrimonial difficulties which resulted in the institution of a divorce action by his wife, in which action a restraining order was issued enjoining the disposition or encumbrance of any property, either community or separate, in the possession or under the control of said Gustave Storch; that after the filing of said divorce action plaintiff and Gustave Storch agreed to dissolve their partnership and did dissolve it on November 20, 1940, but that in such dissolution no disposition was made of the peach orchard, but that the same was, by the consent of all parties, left in the possession of Peter Storch pending the outcome of the action for divorce; that said action resulted in an interlocutory decree entered May 1, 1941, which set aside to Gustave Storch all interest in said real property and any farming equipment within the jurisdiction of the court.

It was further alleged that there remained unpaid to Peter Storch the sum of $7,668.47, together with interest from March 1, 1941. The property held by Peter Storch was described and included a crop of peaches alleged to be the property of the copartnership. Plaintiff also alleged that Peter Storch had laid out certain moneys for the operation of the property since he had taken possession of same on the dissolution of the partnership; and plaintiff offered, and alleged that he was ready, able and willing, upon ascertaining the amount due Peter Storch, to pay his just share of same, or to pay the whole upon being awarded a lien on the premises. He prayed that it be decreed that he and Gustave Storch were the owners of said partnership property subject only to the payment of

the indebtedness to Peter Storch, and that an accounting be had.

Defendants answered, and among other defenses alleged that plaintiff was guilty of laches, that he was estopped by his delay in seeking to enforce his rights, that the agreement alleged in the complaint was oral and therefore unenforceable by reason of the statute of frauds, and, also, that plaintiff, prior to the commencement of his action, had "orally surrendered, cancelled, abandoned, extinguished and rescinded the resulting trust alleged in the complaint . . . and discharged and released said Peter Storch from the performance thereof with the intention permanently to surrender, cancel, abandon, extinguish and rescind the resulting trust alleged in the complaint"; that plaintiff had surrendered and abandoned possession of the premises in November, 1940, at the time of the dissolution of the partnership and had never resumed possession or occupancy thereof; that Peter Storch had entered into possession of the property immediately after plaintiff's oral surrender, abandonment and rescission of the resulting trust and that plaintiff had severed all connections with the operation of the property. Defendants further alleged that they had expended large sums of money since said surrender, in operating same and in growing the crop of peaches thereon and had done so in reliance upon the surrender and abandonment by plaintiff. It was further alleged that at the time of the dissolution of the partnership one of the assets thereof was a lease to an apricot orchard which had been transferred to plaintiff as part of the consideration of his surrender and extinguishment of the resulting trust.

After a trial of the action the court made findings to the effect that it was verbally agreed between plaintiff, Gustave Storch and Peter Storch that the latter would lend the two partners $9,200 for the purchase of the peach orchard and equipment, that the property should be conveyed to Peter Storch as security for the money lent, and that the latter should hold the same in trust for said copartners, as property of the copartnership until they should repay said sum; that pursuant to said agreement the purchase was made, and plaintiff and Gustave Storch entered into possession of the property and operated it as partnership property; that the partnership was dissolved on November 20, 1940; that it was not agreed at that or any time that upon the purchase price being

repaid to Peter Storch the partnership might become entitled to a conveyance from him; that disposition was made in such dissolution for the disposal of said property, and that it was not left in the possession of Peter Storch pending the outcome of the divorce action; and that in November, 1940, plaintiff orally surrendered, cancelled, abandoned, extinguished and rescinded the resulting trust alleged in the complaint to defendant Peter Storch and discharged and released him from the performance thereof with the intention permanently to surrender, cancel, abandon, extinguish and rescind the trust; that defendant Peter Storch consented to and accepted and agreed to accept the same and the same was done by mutual consent of plaintiff and defendant Peter Storch; that thereupon plaintiff completely surrendered and abandoned possession of said premises and the whole thereof, in the month of November, 1940, at the time of the dissolution of the partnership, to defendant Peter Storch, and plaintiff, prior to the commencement of this action, never resumed any possession or occupancy of said premises.

Also that immediately after the dissolution in November, 1940, defendant Peter Storch entered into possession of the property and took complete possession and control of same; that prior to the dissolution plaintiff, since the purchase of said property, had been in the actual possession of said ranch and supervised, farmed, managed, operated and maintained said ranch and property, and immediately after said oral surrender, cancellation, abandonment, extinguishment and rescission of said resulting trust, plaintiff severed all connections with it and had nothing further to do with the supervising, farming, managing, operating or maintaining of said ranch and property. It further found that at the time of the dissolution the crop of peaches on the land had been harvested and that there would be no further income therefrom until the late summer of 1941, and that it was necessary that certain work and labor be performed on said peach orchard during the winter and spring following the dissolution, and that Peter Storch spent large sums in the purchase of necessary equipment, and for work and labor, expending some $4,000 for such purposes, and also performed work upon said property himself; that plaintiff was an experienced operator himself and knew the cost and expense of operating such property and that said expenditure would have to be made, that he had full knowledge of same while the work

was being done by Peter Storch, but that he did not assist in any work thereon, and never contributed or offered to contribute toward the expenses of such operations; that Peter Storch assumed the risk of losing some $7,500, the cost of operating the orchard, if peaches did not sell at a fair price in 1941; that the property was highly speculative in that peach crops fluctuate in value, having sold as low as $5.00 per ton; that the price in 1941 would not be generally known until May, 1941, but that those in the trade had some information earlier that in all probability peaches would yield a much higher price in 1941 than in previous years; that the acts of Peter Storch were done by him pursuant to the cancellation, etc., of said trust and in reliance thereon, and such acts would not have been done, nor moneys expended nor the risks involved taken, had he not relied thereon; and that said oral agreement to surrender, etc., was fully executed.

There were further findings that a part of the consideration for the cancellation, etc., of the trust and the dissolution of the partnership was the transfer of the lease of the apricot orchard to plaintiff, who immediately assumed sole ownership of said lease and the operation of the orchard; that plaintiff was guilty of laches, that he was estopped by his delay in seeking to enforce his rights, and that he abandoned any interest which he might have had in the property with the intention permanently to relinquish any and all rights therein.

The evidence shows that prior to the dissolution of the partnership Gustave Storch assigned and transferred to Peter Storch all his interest in the partnership property. Also that plaintiff himself prepared a statement showing the assets and liabilities of the partnership and the assets remaining to be divided between the parties on dissolution and did not mention the peach orchard as among the assets, nor the balance of the purchase price due Peter Storch as one of the liabilities. The dissolution agreement of November 20, 1940, which was in writing, recited that the parties desired and intended to dissolve the partnership, to wind up its affairs and to agree upon the distribution of the partnership assets; that ''This agreement is intended to and shall completely adjust and settle all claims which either party hereto now has or may have acquired from the beginning of the world to the date hereof, one against the other, and particularly all claims, rights, or duties that may or might arise out of or by reason of the

execution of said agreement of partnership, or any matters or transactions entered into as the result thereof. Each party admits full satisfaction of all of such claims, and demands, and acknowledges good and valuable consideration for the execution of this agreement.''

In an inventory attached to the dissolution agreement no mention was made of the peach orchard, nor was the amount of the loan due Peter Storch set forth, though certain amounts of interest due Peter Storch, and the bank from which Peter Storch had borrowed, were included as accounts payable. Also there was evidence that after the dissolution plaintiff demanded and received a refund of premiums prepaid upon insurance upon the property, that he ordered that no more materials used on it be charged to him and that he cancelled a cannery contract, and that Peter Storch had to sign a new one.

On this appeal it is contended by plaintiff Nicolds that the judgment of the trial court should be reversed, *first,* because that court found that plaintiff *orally* surrendered, cancelled, abandoned, extinguished and rescinded the resulting trust, it being urged that under the statute of frauds (Code Civ. Proc., § 1971) such surrender, cancellation, etc., could only be effected by a writing; *second,* that the trustee could not ''buy up'' other claims against him, and then insist that they, as well as moneys owed the trustee by other parties, be paid as a condition of conveying title; *third,* that plaintiff as beneficiary under the trust could not be estopped to dispute a surrender of his interest to the trustee where the latter was fully aware of the true facts at all times; and, *fourth,* the court erred in refusing to make findings upon matters of evidence introduced by plaintiff as affirmative defenses to defendants' affirmative defenses. No contention is made that the evidence is insufficient to sustain the findings of the trial court.

There seems to be a division of opinion of courts as to whether, even where statutes contain provisions similar to section 1971 of the Code of Civil Procedure, relied upon by appellant, an equity founded on parol proof may be discharged by parol. It is said in an article in 42 Harvard Law Review, 849, 854, that if the creation and continuance of a trust may be shown without any written declaration of trust, no higher degree of evidence should be required to show its extinguishment. And (p. 864) that where a resulting trust arises wholly by parol, as in the case of a purchase-money re-

sulting trust, it is held by the weight of authority that no writing is necessary for its extinguishment.

In a note in 106 American Law Reports 1315, it is also said that while there is some conflict in the cases the majority of courts hold to the principle that an oral contract to surrender, rescind, or abandon the beneficial interest arising under a resulting trust is not rendered ineffective or unenforceable by the statute of frauds. Cases in which this view was taken are there cited. Also see the later case of *Barber* v. *Coleman*, (Tex. Civ. App.) 173 S.W.2d 660.

Restatement of Trusts, section 460, provides:

"Where a transfer of an interest in land is made to one person and the purchase price is paid by another, the resulting trust which arises in favor of the payor can be extinguished by an oral conveyance or surrender of his interest by the beneficiary of the resulting trust to the trustee," and comment thereon reads: "The resulting trust in this situation arises from the fact of the payment of the purchase price and without any writing. As has been stated the inference that a resulting trust arises from the payment of the purchase price can be rebutted without a writing (see § 441, Comment *b*). Similarly, it can be extinguished without a writing." In the California annotations to this volume it is said regarding section 460, *supra*, that no case in point was found, but that *Millard* v. *Hathaway*, 27 Cal. 119, contains dicta that a release by the payor of his interest under a resulting trust must be proved in writing.

Appellant relies upon *Millard* v. *Hathaway*, and some other cases cited in 106 American Law Reports 1316-1317. Respondent relies upon cases cited to the contrary in the same note, and also upon *Carter* v. *Hopkins*, 79 Cal. 82 [21 P. 549], and *Knouse* v. *Shubert*, 48 Cal.App.2d 685 [121 P.2d 74]. In *Carter* v. *Hopkins*, money had been advanced by one Bouldin, plaintiff's intestate, to purchase a lot in San Francisco, title to which was taken in Hopkins' name. In the action, brought by Carter to establish a resulting trust, there was testimony, educed by plaintiff, that there had been a settlement between Bouldin and Hopkins in which the latter had conveyed to Bouldin certain property in San Bernardino County in payment of all advances made by Bouldin, though there was no conveyance by Bouldin of his interest in the trust property. A nonsuit granted at the close of plaintiff's evidence was sus-

tained. On appeal *Millard* v. *Hathaway* was cited and relied upon but the court said: "Conceding that a resulting trust was established as to the lot in the city and county of San Francisco, the court is of opinion that this trust was extinguished by the conveyance by Hopkins to Bouldin of the land in the county of San Bernardino, and that the statute of frauds does not require a conveyance by Bouldin to Hopkins of his equitable interest in the San Francisco lot."

In *Knouse* v. *Shubert, supra,* where the purchase price of property in controversy was paid by appellant, and title was held by defendant, the court said that while this transaction raised the presumption of a resulting trust in favor of appellant, it added, page 689: "However, such presumption is rebuttable and 'oral declarations of the payor's intention to make a gift to the transferee are admissible to show that the payor intended that the transferee should have the beneficial interest in the property, even though the property transferred was an interest in land and the Statute of Frauds is in force. Such declarations are admissible, whether made before or at the time of or subsequent to the transfer. As the resulting trust arises from parol evidence so it may be rebutted by parol evidence.' (Restatement of the Law—Trusts, section 441, Comment b, p. 1348.)"

No other California cases bearing upon the problem are cited by the parties to this action, nor has our research revealed any. However, we do not find it necessary to determine this question in this case, since there are other well established principles upon which the judgment of the trial court must be affirmed. ▪ As hereinbefore stated, that court found that at the time of the dissolution of the partnership between plaintiff and Gustave Storch, plaintiff surrendered, cancelled, abandoned, extinguished and rescinded the resulting trust to Peter Storch, and discharged and released him from the performance thereof; that Peter Storch accepted such surrender, and that thereupon plaintiff surrendered and abandoned possession of the premises and never resumed such possession, and thereafter had nothing to do with the supervising, farming, managing, operating or maintaining of same; that Peter Storch took complete control and possession of the property and operated it himself, that he performed necessary work and labor thereon, and spent large sums of money in the purchase of necessary equipment and for labor thereon, in order to prepare same for a crop of peaches the

coming year; that plaintiff was an experienced operator and knew the cost and expense of operating same, had full knowledge of what work was being done by Peter Storch, but never contributed to or offered to contribute toward such work or expense; and that the acts of Peter Storch were done pursuant to the cancellation, etc., of the trust and in reliance thereon, and he would not have done such acts nor expended moneys nor taken the risks involved in operating the property except in reliance thereon; *and that said oral agreement to surrender, etc., was fully executed;* that plaintiff stood by with full knowledge and permitted Peter Storch to change his position and do the aforesaid acts in reliance upon plaintiff's surrender and rescission. Also there was a finding that as a part of the consideration for plaintiff's surrender of his interest in the peach orchard, ownership of the lease and the operation of the apricot orchard were transferred to plaintiff; that plaintiff was guilty of laches, and that he was estopped to claim any further interest in the peach orchard.

These findings bring plaintiff within the rule that a trust may be extinguished by a parol surrender by the *cestui que trust* in any case in which the trustee so acts in reliance upon the surrender as to make it inequitable for the *cestui* to assert his interest, and the rule that performance of an oral agreement within the statute of frauds takes the case out of the statute. It is said in the note in 106 American Law Reports, page 1318, that whatever may be the nature of the trust relation all courts agree that where there has been some performance by the trustee in accordance with the oral contract, or where his position has been changed as a result of it, the surrender is effective irrespective of the requirements of the statute. Cited in support of this principle are *Carter* v. *Hopkins, supra; Dayton* v. *Newman,* 19 Pa. 194; *Gorrell* v. *Alspaugh,* 120 N.C. 362 [27 S.E. 85]; *Wells* v. *Crumpler,* 182 N.C. 350 [109 S.E. 49]; *Magen* v. *Neiman,* 301 Pa. 164 [151 A. 796]. Also see 42 Harvard Law Review, 851, 865.

It is said in 12 California Jurisprudence, pages 926-927, that a fully executed parol contract cannot be affected by the statute of frauds, and cannot be assailed either by the parties or by third persons on the ground that it is not in writing; that the rule is the same where full performance is by one of the parties only; and that the rule is sometimes placed on the ground of estoppel.

While it is not specifically so stated in *Carter* v. *Hopkins, supra,* it is inferable that the decision was based on equitable estoppel, since Bouldin accepted the San Bernardino property which Hopkins averred was given in settlement, among other things, for Bouldin's interest in the San. Francisco property.

The doctrine of equitable estoppel was applied in *Wilson* v. *Bailey,* 8 Cal.2d 416, 421-423 [65 P.2d 770], where the court said that it is well settled that the facts of a particular case may give rise to an equitable estoppel against a party seeking to set up the statute of frauds, and foreclose him from relying thereon; and that there is no reason for limiting the operation of this equitable doctrine to any particular class of contracts included within the statute of frauds, provided always that the essential elements of estoppel are present.

In *Moulton* v. *Harris,* 94 Cal. 420, 421 [29 P. 706], it was held that where a vendee, in reliance upon an oral contract to convey, takes possession of property and makes improvements thereon, this is sufficient part performance to take the contract out of the statute.

In *Vierra* v. *Pereira,* 12 Cal.2d 629, 632 [86 P.2d 816], where defendants entered into an oral contract of lease for a term of three years and the lessee entered into possession and made expenditures in irrigating, leveling and planting the land, and fully performed the contract, it was held that defendants' conduct estopped them to make the defense of the statute of frauds. Also see *Coonan* v. *Loewenthal,* 129 Cal. 197, 200 [61 P. 940]; *Graves* v. *Arizona Central Bank,* 205 Cal. 715, 718 [272 P. 1063]; *Husheon* v. *Kelley,* 162 Cal. 656, 662 [124 P. 231]; *Bekins* v. *Smith,* 37 Cal.App. 222, 224, 225 [174 P. 96]; *Martin* v. *Pritchard,* 52 Cal.App. 720, 724 [199 P. 846]; *Rundell* v. *McDonald,* 62 Cal.App. 721, 724 [217 P. 1082]; *Schaefer* v. *United Bank & Trust Co.,* 104 Cal. App. 635, 646 [286 P. 723]; *Atkinson* v. *Boynton,* 97 Cal.App. 759, 762 [276 P. 356]; *Atkinson* v. *Boynton,* 111 Cal.App. 128, 130 [295 P. 352].

In view of the legal principles above set forth and the findings of the trial court we conclude that the first above mentioned contention of plaintiff cannot be sustained, and that there was a valid surrender, cancellation, abandonment and extinguishment of the resulting trust. This conclusion renders it unnecessary to pass upon appellant's second and third contentions on appeal.

As to the fourth one, that the trial court erred in refusing to make certain findings proposed by plaintiff, which cover six printed pages in the transcript, they pertain largely to what plaintiff contends were his reasons for the dissolution of the partnership, are evidentiary, and not matters set forth in plaintiff's complaint. ██ It is well established that it is unnecessary for a court to make findings upon other than ultimate facts (*Culver* v. *Miller*, 54 Cal.App. 545, 549 [202 P. 338]), nor upon other than material issues; ██ also a party may not complain of a failure to find upon an issue where a finding, if made, must necessarily have been adverse to him; and if findings are made upon issues which determine a cause, other issues become immaterial and a failure to find thereon does not constitute prejudicial error. (24 Cal.Jur. 942-949.) ██ Furthermore, unless there is evidence in the record sufficient to sustain a finding in favor of a complaining party, and such finding would, if made, countervail or destroy the effect of other findings, no error can be predicated upon the failure of the trial court to make such requested findings. (24 Cal.Jur. 941.)

Appellant makes no contention that the findings made are insufficient to sustain the judgment except that he does argue that a simple finding that a party is estopped is insufficient. We do not think that it can be said in this case that the findings are subject to this criticism. We have set forth at some length findings made by the court which are sufficient to constitute an estoppel against plaintiff, and we are satisfied that the findings made cover all of the material issues in the case, and sustain the judgment in favor of defendants.

██ There is also some contention by appellant that defendants did not come into court "with clean hands," and were, therefore, not entitled to consideration by a court of equity. Apparently the trial court was satisfied in this respect, and since the evidence is amply sufficient to show that plaintiff at the time of the dissolution of the partnership completely rid himself of all responsibility for the peach orchard, turned possession of same over to Peter Storch, and, with full knowledge that much work and large expenditures upon it would be required during the coming months did not make or offer to make any contribution thereto, and only filed this action in May, 1941, after prospects for a good price for peaches in 1941 appeared, he is in no position to assert that defendants."

hands were not clean, since the cleanliness of his own hands may be said to be subject to question.

The judgment is affirmed.

Thompson, J., and Peek, J., concurred.

A petition for a rehearing was denied December 18, 1944, and appellant's petition for a hearing by the Supreme Court was denied January 22, 1945.