202 So.2d 810 (1967)
Sara S. Jones LAMB, Appellant,
v.
William T. JONES et ux., et al., Appellees.
Nos. 66-969-66-972.
District Court of Appeal of Florida, Third District.
September 19, 1967.
Rehearing Denied October 23, 1967.
*812 Worley, Gautier & Patterson, Sam Daniels, Miami, for appellant.
Miller, Miller & Barkas, Beckham & McAliley, Rutledge & Milledge, Horton & Schwartz, Miami, for appellees.
Before CHARLES CARROLL, C.J., and BARKDULL and SWANN, JJ.
PER CURIAM.
The record on appeal reveals the following: The appellant and the appellee, William T. Jones, are brother and sister. They were reared in South Carolina, where the appellee, William T. Jones, presently resides. The appellant is his older sister. She was schooled as a trained nurse; he was schooled as an attorney and was admitted to the bar in South Carolina in 1949. By 1960, the appellant was married to a man by the name of Steppe and was working as a nurse for one Bronson Lamb. Her patient desired both to marry the appellant and give her $1,000,000.00 worth of stock in Liberty National Life Insurance Company [headquartered in Birmingham, Alabama] in which Bronson Lamb and his family were the major stockholders. The sister contacted her brother by telephone and received certain suggestions from him relative to securing a divorce from her then husband. accepting the transfer of the $1,000,000.00 worth of the capital stock in Liberty National Life Insurance Company from her patient, which transfer was accomplished early in 1961. Thereafter, Bronson Lamb caused his attorneys in Mobile, Alabama, to prepare a will for his execution naming the appellant as the sole beneficiary of his estate. At the time this will was executed, the appellant and Bronson Lamb had not married and she was named in the will as beneficiary under the name of Sara Jones Steppe. They were married on October 5, 1961, after her divorce from Steppe.
In November of 1961, Bronson Lamb notified the transfer agent of the Liberty National Life Insurance Company in Birmingham, Alabama, to transfer another $2,000,000.00 worth of the capital stock in the insurance company to the appellant. Because of tax consequences raised by the counsel for the insurance company, this transfer did not take place in 1961. In March of 1962, the appellant, her husband [Bronson Lamb], and the appellee [William T. Jones] journeyed to Birmingham, Alabama, for the purpose of obtaining the transfer of the additional $2,000,000.00 worth of capital stock in the aforementioned insurance company. The appellee, William T. Jones, testified in substance that the appellant advised him on the evening before the transfer that she had already received $1,000,000.00 worth of stock, and if she received the $2,000,000.00 the next day she would give him $1,000,000.00. The appellant, her husband, and the appellee proceeded to the insurance company office and the transfer took place in routine fashion, and the stock was issued in the appellant's name on March 15, 1962.
In the spring of 1962, the appellant and Bronson Lamb decided to purchase a home in Dade County, Florida. Checks totaling $87,000.00 were delivered by the appellant to her brother to consummate this purchase, and title to the property was taken in the name of the appellee, William T. Jones. Subsequent to the title being placed in his name, brother Jones caused a note to be executed and delivered to the appellant reflecting the total purchase price of $87,000.00, together with a mortgage encumbering the purchased property. Neither the note nor the mortgage were recorded.
Some time subsequent to the marriage between the appellant and Bronson Lamb, brother Jones prepared a will for his sister naming himself as the residuary legatee.
In 1963, Bronson Lamb went to a prominent lawyer in Dade County and caused an *813 inter vivos revocable trust to be prepared, which transferred $4,000,000.00 worth of the capital stock in the aforementioned insurance company to an institutional trustee, naming himself as the income beneficiary and providing that if the trust was still in existence at the time of his death the corpus of the trust should be transferred to his wife [the appellant] or, in the event she predeceased him, the corpus should go to brother Jones. On June 20, 1963, lawyer Jones caused the trust to be re-executed naming himself as trustee, as a result of which the capital stock of a value of $4,000,000.00 in the aforesaid insurance company was transferred to his possession in South Carolina. By the terms of the trust, the fee for the trustee was to be $600.00 a year.
On August 27, 1963, Bronson Lamb committed suicide. The will which had been drawn by counsel in Mobile, naming an institution as executor, was offered for probate in the State of Alabama wherein the deceased had continued to maintain a residence and domicile. Bronson Lamb's children by a prior marriage contested the will [which left everything to the appellant], contending that it was executed as a result of undue influence. At the time of the funeral, the appellant told her brother that the house in Dade County [to which he held title] was his and, on several subsequent occasions, told others that this was his house and caused to be delivered to him the note and mortgage which he had executed, reflecting the indebtedness due from him secured by the mortgage on the home.
The probatable estate in Alabama was slightly in excess of $117,000.00. Under Alabama law, a jury determines whether undue influence has been exercised and the jury, upon the trial of this issue in Alabama, was unable to reach a verdict. Therefore, the matter was scheduled to be tried a second time. Before the matter could be resubmitted to another jury, the will contest was settled by the appellant transferring shares of stock in Liberty National Life Insurance Company worth $320,000.00.
Upon the will being contested in Alabama when filed for probate, lawyer Jones and his sister went to Mobile and he helped her negotiate a fee which the Alabama lawyers would charge her for representing her in the will contest. This fee was ultimately fixed at $200,000.00.
Lawyer Jones' testimony and evidence was to the effect that he gave constant advice and counsel to his sister between the period of late 1960 through the end of November, 1964; that he appeared in no law suits and prepared no written instruments for her, other than preparing her will which named him as residual legatee and preparing the last trust agreement which named him as trustee and contingent beneficiary. In April, 1964, he requested the payment of the $1,000,000.00, claimed as a result of the transfer of the $2,000,000.00 worth of capital stock in the Liberty National Life Insurance Company in March of 1962, which she refused to make claiming there was no such understanding.
Although the terms of the inter vivos trust fixed its termination upon the death of Bronson Lamb and required the trustee to deliver the capital stock [which constituted the corpus of the trust] to the appellant, he declined to do so and she had to institute suit in early 1965 in a Federal District Court in South Carolina to cause this stock to be delivered to her.
Early in 1965 the appellant also instituted suit in the Circuit Court of Dade County, Florida, against her brother and his wife, and a real estate concern, contending that she was the beneficial owner of the home purchased in Dade County although title was in her brother's name. Her brother responded with an answer conceding that title was originally held by him as trustee under a resulting trust, but averring that the trust had been extinguished by release and surrender of her beneficial interest in September of 1963, *814 immediately subsequent to the death of Bronson Lamb. Lawyer Jones ultimately filed an amended counterclaim, sounding at common law, for attorney's fees in the sum of $1,800,000.00 of which $1,000,000.00 was allegedly on the express oral agreement made in March of 1962 upon the occasion of the transfer of $2,000,000.00 worth of capital stock in the aforementioned insurance company and $800,000.00 for services rendered on a quantum meruit basis from the date of the death of Bronson Lamb until she no longer sought his counsel and advice. She filed an answer to the counterclaim, denying the allegations thereof and demanding a jury trial.
With the issues thus joined on the original complaint in equity and on the counterclaim, with a jury trial demanded, the trial court entered an order that he would consider her chancery complaint first and then would go forward with a jury trial on the issues as made by the counterclaim and answer. At the conclusion of the hearing on the chancery matter, he entered a final decree finding in favor of the appellee, William T. Jones, and dismissed the appellant's complaint on the merits, indicating in his findings that the surrender of the beneficial interest in the house by the appellant in September, 1963, was in part a gift to her brother and in part a payment of any legal services which might have been due him up until that time, save and except the alleged $1,000,000.00 contingent fee because of the stock transfer in March, 1962, recognizing that the brother admitted that if he got the house it would have the effect of "wiping the board clean" except for the alleged contingent fee.
Following the chancery action, the remaining pleadings by lawyer Jones were for recovery under an express oral agreement for a contingent fee of $1,000,000.00 for services rendered in March of 1962 and for quantum meruit for services rendered subsequent to September 1, 1963. Extensive testimony and evidence was adduced before the jury. A large part of the testimony upon which lawyer Jones claimed a fee was his failure to deliver the stock, which was the corpus of the inter vivos trust to the probate estate in Alabama. It was his contention that by the failure to deliver this asset, he preserved or conserved for the appellant not only $4,000,000.00 worth of assets, but saved expenses in connection with the probate estate. He also testified at great length as to his advice and counseling with the appellant in reference to the will contest and the ultimate settlement thereof. The range of testimony was that this quantum meruit service was worth a minimum of $35,000.00 and a maximum of 25% of what he may have conserved for the appellant. The jury returned a verdict for $750,000.00 in favor of the appellee, William T. Jones, against his sister, the appellant. Obviously, the jury did not return a verdict on the alleged express contingent fee for $1,000,000.00 and no error has been urged in this regard by the appellee.
The appellant has filed several appeals questioning the correctness of the final decree in the chancery matter [awarding brother Jones the house] and the final judgment [awarding him a fee of $750,000.00 based on a quantum meruit plea for services subsequent to September 1, 1963]. They have been consolidated for all appellate purposes. The appellant has presented seven points on appeal, two of which go to the validity of the chancery decree. These contend that the beneficial interest in a resulting trust, involving an equitable interest in realty, may not be surrendered by parol and that an attorney may not receive an oral gift from a client during the period of attorney-client relationship. As to the final judgment, it is contended that the trial court erred in the giving of certain instructions relative to quantum meruit services and in charging that there was an implied promise on the part of a sister to pay her brother [an attorney] a reasonable fee; that a lawyer admitted to practice only in South Carolina cannot recover for services rendered in Alabama and Florida, and that the verdict was excessive.
*815 As a general proposition, one who received a benefit as the result of a transaction [where a fiduciary relationship exists] has the burden of establishing the bona fides of the transfer. See: Bolles v. O'Brien, 63 Fla. 342, 59 So. 133; Rich v. Hallman, 106 Fla. 348, 143 So. 292; Adams v. Saunders, 139 Fla. 730, 191 So. 312; Crane v. Stulz, Fla.App. 1961, 136 So.2d 238. By a preponderance of the evidence, the chancellor found that the appellant had relinquished any interest in the real property, either as a gift in part to her brother or in part as extinguishment of any legal fees that she might owe to him. This finding is amply supported by competent evidence in the record and, there being such, we will not disturb the final decree in this regard. See: Seiff v. Presto Brick Machine Corp., Fla.App. 1964, 168 So.2d 700; Miami Beach First National Bank v. Shalleck, Fla.App. 1966, 182 So.2d 649; Barrineau v. B & F Auto Parts, Inc., Fla.App. 1966, 191 So.2d 53. The appellant urges that the surrender of this beneficial interest in the resulting trust could not have been effected without an instrument in writing having been executed. We do not agree. Resulting trusts are not always created by an instrument in writing. See: § 689.05, Fla. Stat., F.S.A. And, if appears that there is ample authority to sustain the proposition that a person can release a beneficial interest in a resulting trust by something other than a written instrument. See: Bogert, Trusts and Trustees 2nd Ed., § 466, pp. 662, 663; Restatement of the Law, Second, Trusts 2d, § 460; Vol. IV, Scott on Trusts, § 460; 106 A.L.R. 1315; 173 A.L.R. 282. Moreover, in addition to the oral statements to her brother and others and his taking possession of the property and maintaining it [in this connection, see: Nicolds v. Storch, 67 Cal. App.2d 8, 153 P.2d 561; Johnson v. Altman, 96 Cal. App.2d 467, 215 P.2d 768; Murphy v. Kelly, 137 Cal. App.2d 21, 289 P.2d 565], she caused to be redelivered to him the note and mortgage which he had executed reflecting an indebtedness to her for the full amount of the purchase price of the property. Therefore, we find no merit in the appellant's contentions that the final decree is erroneous.
We find no merit in the appellant's point that the appellee, who was not admitted to practice in this State, could not recover for legal services rendered in the nature of advice and counsel under the circumstances of this particular case. See: Appell v. Reiner, 43 N.J. 313, 204 A.2d 146; In re Estate of Waring, 47 N.J. 367, 221 A.2d 193. See also: Spanos v. Skouras Theatres Corp., 2d Cir.1966, 364 F.2d 161.
We find that the trial court erred in failing to give the instruction requested by the appellant to the effect that normally there is no presumption that a sister agreed to pay her brother a reasonable fee for legal services, particularly in view of the fact [as revealed in this record] that in sustaining Bronson Lamb's will and protecting the inter vivos trust the brother had a considerable possible beneficial interest, in that he was the residual legatee of the appellant's will which he had prepared. And, if she predeceased him without changing that will, the brother would receive substantial assets and, if she had predeceased Bronson Lamb, he would have received the corpus of the inter vivos trust as the contingent beneficiary. In this connection, see the following: Mills v. Joiner, Fla. 1884, 20 Fla. 479; Florida National Bank & Trust Co. of Miami v. Brown, Fla. 1949, 47 So.2d 748; 7 A.L.R.2d 8, p. 105.
As indicated earlier, the matter was to be submitted to the jury on pleadings providing for an express contract to pay $1,000,000.00 for one alleged service prior to September, 1963. However, the trial court, in charging the jury on this issue, alternatively charged that the jury could award the appellee reasonable value *816 of services rendered in regard to the alleged fee of $1,000,000.00. We find the trial judge committed error in so charging the jury. The jury rejected the express agreement claim and no cross-assignment was filed. The appellee has attempted to urge that notwithstanding the pleadings, during the trial the parties impliedly agreed to try the question of services prior to September, 1963 on an alternative basis of quantum meruit in the event the jury rejected the claim of the express agreement for $1,000,000.00. However, we find no merit in this contention. The trial judge clearly indicated, at the conclusion of the chancery matter and the opening of the jury proceedings, that the only claim for services prior to September 1963 would be on the alleged express oral agreement to pay $1,000,000.00, and it is apparent in the record that the appellant never consented to try any issue of quantum meruit prior to this date and objected to the introduction of any evidence tending to go to this fact. Rule 1.15(b), Florida Rules of Civil Procedure, 1965 Rev., 30 F.S.A. will permit an issue not raised in the pleadings to be tried by consent of the parties. The same rule authorizes the trial judge to permit amendments to conform to the evidence even over objection. However, the appellee can take no solace from this rule, as the appellant registered her objection to this issue being tried and the appellee proposed no amendments to the trial judge upon which he could make a ruling. See: Robbins v. Grace, Fla.App. 1958, 103 So.2d 658; Finley P. Smith, Inc. v. Schectman, Fla.App. 1961, 132 So.2d 460; Rule 1.15(b), Florida Rules of Civil Procedure, 1965 Rev.
We agree with the appellant that the judgment rendered on the verdict for $750,000.00 is excessive. First, because there was no individual responsibility or liability on the part of the appellant for services rendered in preserving the corpus of the trust [see: 54 Am.Jur., Trusts, §§ 528, 532; 90 C.J.S. Trusts §§ 397, 398; Restatement of Law, Second, Trusts 2d, § 242; Vol. III, Scott on Trusts, 2nd Ed., §§ 242.2, 242.3]; and second, because any claim for such services should have been urged against the corpus of the trust in the South Carolina proceedings. Therefore, we find that it was improper to permit the appellee to submit to the jury that he was entitled to a fee on a quantum meruit basis for services allegedly rendered in preventing the corpus of the inter vivos trust [valued at $4,000,000.00] from being placed in the probate proceedings. As a trustee and having prepared the trust instrument, he was unable to impeach its validity. See: Bogert, Trusts & Trustees, 2nd Ed., § 581, p. 214; Vol. II, Scott on Trusts, 2nd Ed., § 178. And, by the terms of the trust, upon the death of Bronson Lamb he was under an obligation to deliver the corpus to the appellant. To do otherwise would be to violate his duty as a trustee. See: Vol. II, Scott on Trusts, 2nd Ed., § 164; 54 Am.Jur., Trusts, § 307.
There is nothing in this record to indicate that any legal proceedings were ever taken in connection with the probate matter to cause the corpus of this trust to be included in the probate estate. If such had been the case, the appellee as trustee would have been required, legally, to resist such a move. See: 54 Am.Jur., Trusts, §§ 339, 558; 90 C.J.S. Trusts § 247(b); Restatement of Law, Second, Trusts 2nd, § 178; Bogert, Trusts and Trustees, 2nd Ed., § 581; Vol. II, Scott on Trusts, 2nd Ed., § 178. If the trustee has any claim for services rendered in conserving the corpus of the trust, it is a charge against the corpus or its income and should be asserted as a claim against the trust assets. See: 54 Am.Jur., Trusts, §§ 528, 532; 90 C.J.S. Trusts §§ 397, 398; Restatement of Law, Second, Trusts 2nd., § 242; Vol. III, Scott on Trusts, 2nd Ed., §§ 242.2, 242.3.[1] This is particularly so *817 in view of the fact that the corpus of this trust was the subject matter of an independent action between the appellant and the appellee in the State of South Carolina. See: Ake v. Chancey, 5th Cir.1945, 149 F.2d 310; Sinkbeil v. Handler, D.C.Neb. 1946, 7 F.R.D. 92; G. & M. Tire Co. v. Dunlop Tire & Rubber Corporation, D.C.N.D.Miss. 1964, 36 F.R.D. 440; Rule 13(a), Federal Rules of Civil Procedure.
This point of the appellant [not being liable individually for alleged charges or fees in preserving the trust and that any such claims should have been made against the corpus] was not specifically made in the trial court in post trial motions, and was not assigned as error to this court nor urged as a point for reversal. However, notwithstanding the failure of counsel to raise this issue in this court, it appears on the face of the record and we deem it to be of a fundamental nature affecting the validity of the amount of the damages awarded, as it presented to of the damages awarded, as it presented to the jury an issue of liability and an alleged claim of damages which was not the appellant's responsibility. See the following on this court's authority when it finds fundamental error in a record: City of Clearwater v. State, 108 Fla. 623, 147 So. 459; De Fonce Construction Co., Inc. v. Ewing, Fla.App. 1958, 99 So.2d 718; Miami Gardens, Inc. v. Conway, Fla. 1958, 102 So.2d 622; Board of Public Instruction of Sarasota County, etc. v. Fidelity and Casualty Company of New York, Fla.App. 1966, 184 So.2d 491; 2 Fla.Jur., Appeals, § 290, pp. 632-634.
Therefore, for the reasons above stated, the final decree here under review in Cases No. 66-971 and 66-972 be and the same is hereby affirmed; and the final judgment here under review in Cases No. 66-969 and 66-970 be and the same is hereby reversed and remanded for a new trial to determine what attorney's fee, if any, the appellee is entitled to on a quantum meruit basis of and from the appellant subsequent to September, 1963.
Affirmed in part; reversed in part and remanded with directions.
NOTES
[1] By the terms of the trust all fees and expenses were to come out of the income. The trust provided: "Out of the income derived by the Trustee from the `Trust Estate', the Trustee shall first pay all necessary taxes, costs and expenses of administering and protecting this trust, including his compensation of Six Hundred ($600.00) Dollars annually. * * *"